PEOPLE'S BROADCASTING CORPORATION, Respondent, *v.* GEORGE BATTEN COMPANY, INC., Appellant.

First Department, January 30, 1931.

*Jeremiah T. Mahoney* of counsel [*Harry J. Sondheim* and *Louis A. Sable* with him on the brief; *Alexander, Cohn & Sondheim,* attorneys], for the appellant.

*Jeremiah A. O'Leary* of counsel [*Norman H. Samuelson,* with him on the brief], for the respondent.

McAvoy, J. Plaintiff, a domestic corporation, as owner and operator of a radio broadcasting station, WPCH, sued the defendant, a domestic corporation, engaged in the business of advertising agency, for breach of an alleged oral contract, whereby the appellant

was to furnish the contract or privilege for broadcasting the National and American Leagues baseball games during the baseball season of 1927.

Plaintiff asserted and gave proof that one England, a sales manager, called on the defendant's secretary, Lawrence, in response to defendant's letter inquiring about broadcasting rates. Lawrence referred him to a man in defendant's employ, named Porter, as the radio manager; that thereafter all further negotiations were had with Porter; that Porter stated that he had a contract for broadcasting the baseball games in New York during 1927; that thereafter England delivered to Porter a letter in which plaintiff offered for the sum of $15,300 to broadcast the games over three stations, furnish the announcer, Major J. Andrew White, hire telegraph lines to the Polo Grounds and Yankee Stadium at a cost of $440 a month, furnish additional mechanics and the service of its publicity department. The plaintiff was also to pay the defendant the customary fifteen per cent agency commission on the $15,300. Porter then asked England to find a sponsor who would pay for broadcasting the games. Thereafter England procured a sponsor and delivered to Porter the sponsorship agreement between the plaintiff and the Moto-Meter Company, which calls for the payment of the sum of $16,500 in weekly installments for sponsoring the games.

Defendant did not have the privilege or contract to broadcast the games and after several attempts to obtain it the owner of the American League club definitely refused it.

Plaintiff was required to prove that Porter, the appellant's employee, with whom negotiations were had, was authorized to make the alleged contract binding the defendant corporation, and that a complete contract was so made. The plaintiff's only evidence as to Porter's authority was the testimony of respondent's sales manager, England, regarding his call on Lawrence, who referred him to Porter as their radio manager, and that thereafter all further negotiations were had with Porter.

On behalf of the defendant it was shown that Porter was not an officer of the defendant but had been recently hired merely to investigate and collect information about radio broadcasting as an advertising medium and the rates therefor, as a prel minary to establishing a radio department to employ that medium; that he was not engaged nor authorized to make any sales or contracts. It was an unusual contract and the authority of a secretary to make such a contract should have been made manifest. There is no proof that Lawrence, the secretary, had any authority to enter into a contract such as is alleged to have been made between plain-

tiff and defendant. If the secretary had no authority he could not delegate any authority to Porter, who is merely an employee.

We think that the plaintiff failed to establish that the defendant's employee, with whom it negotiated, was authorized to contract on behalf of the defendant.

P aintiff pleaded that it was licensed to operate Station WPCH. However, it was shown at the trial that it was in fact never licensed to operate that station or any other radio station; that license to operate Station WPCH had been issued to and had always remained in the Concourse Radio Corporation, a separate concern having different officers and directors from those of the plaintiff.

Some testimony was admitted, over objection and exception, about a contract between such Concourse Radio Corporation and the plaintiff without showing the terms thereof, but the license to operate Station WPCH had not been transferred to respondent, as required by the so-called Radio Act of 1927 (44 U. S. Stat. at Large, 1162, chap. 169; U. S. Code, tit. 47, §§ 81–119).

There was no proof that any one was licensed to take personal charge of the apparatus for the plaintiff as distinguished from the station license, as required by section 20 of the Radio Act.

The operation of a radio broadcasting station is prohibited without two specified licenses: (a) The station license issued in the name of the person or concern operating the station, and (b) an operator's license issued to the person in actual charge of the transmitting apparatus. (Radio Act of 1927; 44 U. S. Stat. at Large, 1162, chap. 169; U. S. Code, tit. 47, §§ 81–119).

Without the required licenses plaintiff was unlawfully engaged in operating a radio broadcasting station and cannot recover on the alleged contract in furtherance thereof.

Plaintiff contends that no license was required to be procured directly by it from the Federal Radio Commission before it could lawfully engage in broadcasting, because it had been broadcasting prior to February, 1927, on a wave length and frequency allotted to its letters as far back as the year 1923 or 1924, under a license issued to the Concourse Radio Corporation for the use of which plaintiff had contracted with said licensee; that prior to February of 1927, or the passage of the Radio Act of 1927, the statute regulating interstate radio communication was the Radio Act of 1912, approved August 13, 1912, and effective December 13, 1912 (37 U. S. Stat. at Large, 302, chap. 287; U. S. Code, tit. 47, §§ 51–60); that the right to assign such a license was unrestricted.

The Radio Act of 1912 provided that every person, company or corporation had to apply to the Secretary of Commerce for a license before they could use or operate any apparatus for radio communica-

tion as a means of commercial intercourse. It further provided that such licenses could only be issued upon an application therefor, and only to a citizen of the United States or Porto Rico, or to a company incorporated under the laws of some State or Territory of the United States or Porto Rico, etc.

It is apparent that a license of the character required could not be assigned without the consent of the licensing authorities, for otherwise there is no way by which the licensing authorities could pass upon the eligibility of the person or corporation to operate the station under the assignment, and one of the chief purposes of the act of 1912 would thus be frustrated. A license being a personal privilege cannot be assigned unless permitted by the statute, and then only upon compliance with the conditions of the statute.

But even if the license to operate Station WPCH could have been assigned to respondent with or without the consent of the authorities as already noted, the proof shows that it was not so assigned.

Plaintiff refers repeatedly to an alleged contract with the Concourse Radio Corporation from which it seeks to ask the court to draw the inference of an assignment to the plaintiff. It is impossible to determine from respondent's brief whether it claims to have been operating Station WPCH under an assignment or under a contract, the terms of which are not before the court. The contract was in writing; it was not produced in court, nor were its contents given in evidence. Any argument based on the contents of that contract is, therefore, without any evidence to support it. The only reference to the contents of the contract was that Station WPCH was operated under the contract by the plaintiff; that the contract required certain payments and that when payments were not made the Concourse Radio Corporation took back the apparatus and the station.

Respondent contends that the breach of the contract between the parties occurred on April 13, 1927, and that under the Radio Act of 1927 the sixty-day saving period had not expired and it was in a position to perform; that it could have taken out a new license in its own name under its contract with the Concourse Radio Corporation. This contention is untenable, because it was a condition precedent to performance of the contract on the part of the plaintiff that it be in a position to perform the contract at the time of the execution thereof. Since plaintiff failed to prove an assignment of the license from the Concourse Radio Corporation, it cannot say that it was in a position to perform the alleged contract entered into with the defendant. For these reasons we find the judgment has no legal basis.

The judgment and order denying the motion to set aside the verdict should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.